Dunkin, Ch.
delivered the opinion of the Court.
In order to understand the judgment of the Court, it is necessary to state that H. W. Sullivan was a merchant of the *177 town, of Hamburg. Being indebted to the Bank of Hamburg in about the sum of ten thousand dollars, he, on the 6th .Tune, 1839, mortgaged to them his real estate, consisting of four lots in the town of Hamburg, and two pine tracts in the neighborhood. In May or June, 1840, Sullivan sold to William Holmes the woman Mary and her two children, and in June Holmes sold them to the defendants, Howard <fc Garmany.— The defendants boarded with Sullivan, and the negroes remained as they had been previous to the sale.
On the 1st October, 1840, Sullivan confessed judgment to the Bank for ten thousand nine hundred and sixty-nine dollars, which was duly entered, and execution lodged on the same day. Under this execution, the Sheriff levied on the real estate, and sold it, on the 5th January, 1842, for eight thousand seven hundred and ninety-four dollars. The Bank of Hamburg were the purchasers, who gave a .receipt to the Sheriff, and credited their execution with that amount.
It was soon afterwards ascertained that there was in the Sheriff’s office an execution against H. W. Sullivan, of an elder date than that of the Bank, to wit: of the 2d November, 1837, in favor of O. M. Furman, Cashier of the Bank of the State, for about six hundred and fifty dollars, and which had been overlooked in the settlement between the Sheriff and the Bank of Hamburg. With the consent of the attorney of C. M. Furman, the Bank of Hamburg, on the 7th April, 1842, caused Furman’s execution to be levied on the negroes in the defendants’ possession. The defendants executed to the Sheriff a forthcoming bond. They then, to'wit: on the 20th August, 1842, paid Furman the amount of his execution, stayed all further proceedings in the case, and instituted a suit at law against the Sheriff for the amount of so much o'f the sales of the real estate as would pay the amount of Furman’s execution, and have obtained judgment against the Sheriff, which they are about to enforce.
On this state of facts the decree of the Circuit Court was pronounced. The defendants occupy a double character. — ' They are the assignees of Furman’s execution, and they are the purchasers of the negroes from H. W. Sullivan. It is not questioned that as between Furman, or his assignees, and the Bank of Hamburg, the equity is plain, and that, prior to the sale of the real estate in January, 1842, the Bank could have required Furman, having a general lien on the estate of the d.ebtor, to resort to his other property before interfering with their specific lien. But the defendants are purchasers, although of a subsequent date to the mortgage of the Bank, and it is insisted that there is no such principle as that *178 indicated in the decree, and that the doctrine of Clowes vs. Dickenson is law only in New York, and has not been sanctioned by any decision in this State. This seems a misapprehension. The general principle was applied in Stoney vs. Shultz, 1 Hill C. R. 465. But in Gist vs. Pressly, 2 Hill C. R. 318, the doctrine is elaborately examined and affirmed both at the Circuit and in the Court of Appeals.— The complainants held the eldest mortgage against their debt- or on two negroes. The defendants held a junior mortgage of certain real estate. But there was an execution elder than both. Defendants, to save the property mortgaged to them, purchased the execution, and under it, sold the negroes mortgaged to the complainants — Chancellor Johnston held that the complainants were entitled to reimbursement out of the proceeds of the real estate mortgaged to the defendants. Chancellor Harper, in delivering the judgment of the Appeal Court, says “ the principles of the Chancellor’s decision are perhaps less distinctly seen, because the defendants, Allston and Hodges, sustain the characters both of senior execution creditors and junior mortgage creditors of the deceased John B. Pressly. If the execution creditors were different persons, and were now seeking to enforce their executions against the slaves in question, the plaintiff would have a clear equity to restrain them, and to compel them to resort to the property mortgaged to the defendants” — “ and if the executions had been enforced against this property, the defendants would have had no redress or claim for contribution against the plaintiff.” “The principle,” says he, “is.fully explained by Chancellor Kent in Gill vs. Lyou, 1 J. C. R. 407, and Clowes vs. Dickenson, 5 J. C. R. 235. When the intestate mortgaged (that is, conditionally sold,) the slaves to plaintiff, his execution creditors were bound, on equitable principles, to exhaüst the property which remained in his hands, before pursuing that to which plaintiff had acquired a title. Among this property was the land and mill and house and lot in question. When the intestate, afterwards, conveyed these to defendants, he could only convey them subject to the equitable burthen to which they were liable in his own hands.” In the language of Chancellor Kent, “ they sit in the seat of their grantor. The burden is that the property must be liable to the execution creditors in preference to that conveyed to plaintiff” The Court then proceed to determine that if the plaintiff omitted to restrain the execution creditor, but permitted his property to be sold, he was entitled to maintain his bill for reimbursement against the defendants.
It is urged, however, that the defendants, Howard & Gar- *179 many, have held more than four years adverse possession prior to the filing of this bill. It would be very difficult, under the circumstances detailed in the evidence, to infer a title by adverse possession alone in the defendants as against the execution creditors of Sullivan. But in the view which the Court takes, this is not a material inquiry. The defendants purchased in June, 1840. On the 7th April, 1842, less than two years afterwards, the execution of Furman was. levied on the negroes in their possession, and they executed a bond to the Sheriff for their forthcoming, and then obtained the assignment and instituted their suit at law against the Sheriff, who is one of the parties complainant. It could hardly be said that their possession was adverse to the execution creditor, whose claim they thenceforth represented. But on the principles heretofore announced, as between the Bank of Hamburg and themselves, they did no more in August, 1842, than they were bound to do, by paying off Furman’s execution in order to protect their own purchase. The equity of the Bank did not arise until, in the language of Chancellor Kent, “the defendants attempted to wield this execution with a very inequitable hand,” by (substantially) enforcing payment out of the property mortgaged to' them. Four years had not elapsed since that time, and in no view could the complainants be barred.
If the slaves, Mary and her children, were not of value sufficient to satisfy Furman’s execution in April, 1842, it might be necessary to modify the decree, and limit the responsibility of the defendants in that way. But on this point it seemed to be conceded that there was no doubt, and that a reference would only serve to protract the litigation. It is, therefore, ordered and decreed, that the decree of the Circuit Court be affirmed, and the appeal dismissed.
Johnston, Ch. and Harper, Ch. concurred.

Decree affirmed.